United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 18, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-34656** |
| **ALL TEXAS ELECTRICAL CONTRAC-** | § | |
| **TORS, INC.,** | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |
| _____ | § | |
| **ALL TEXAS ELECTRICAL CONTRAC-** | § | |
| **TORS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 21-3287** |
| | § | |
| **NSPS METALS LLC** | § | |
| **and** | § | |
| **AMERICAN COMMERCIAL CONTRAC-** | § | |
| **TORS, LLC** | § | |
| **and** | § | |
| **JAMES ROZMAN** | § | |
| **and** | § | |
| **DENHAM-BLYTHE COMPANY, INC.** | § | |
| **and** | § | |
| **SUSAN ROZMAN,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

NSPS Metals, LLC seeks dismissal of All Texas Electrical Contractors, Inc.'s amended

complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  On

January 4, 2022, the Court held a hearing and took the matter under advisement.  For the reasons

stated herein, the Court grants NSPS Metals, LLC's Motion to Dismiss.  All Texas Electrical Con-

tractors, Inc.'s claims for: (B) 11 U.S.C. § 542 turnover; (D) 11 U.S.C. §§ 548(a)(1)(B) and 550

constructive fraudulent transfer; (E) TUFTA constructive fraudulent transfer; (F) quantum meruit;

(G) unjust enrichment; and (O) civil conspiracy as against NSPS Metals, LLC, are dismissed. Additionally, All Texas Electrical Contractors, Inc.'s claims for: (A) negligent hiring and supervision and (L) breach of fiduciary duty, are dismissed with prejudice.

## I.  BACKGROUND

The instant dispute arises out of the construction of a multimillion-dollar steel processing facility in Houston, Texas organized by NSPS Metals, LLC ("*NSPS*" or "*Defendant*").[1]  Denham-Blythe Company ("*Denham-Blythe*") was hired by NSPS to serve as project manager on this construction.[2]  While searching for a location to construct the facility, NSPS entered into negotiations for 14.297 acres of real property in Harris County, Texas.[3]  As a condition of the real property sale, NSPS was required to hire American Commercial Contractors, LLC ("*ACC*") as its general contractor.[4]  Prior to engaging ACC, Denham-Blythe advised NSPS against hiring ACC due to its previous history of, inter alia, not paying its subcontractors.[5]  Nonetheless, on or about February 15, 2019, the parties reached an agreement and a general warranty deed was conveyed to NSPS.[6]

All Texas Electrical Contractors, Inc., ("*Plaintiff* or *ATE*"), is an electrical construction contractor organized as a Texas corporation.[7]  On or about June 3, 2019, Plaintiff entered into a lump sum subcontractor agreement ("*Subcontract*") with ACC in the amount of $915,405.00 to provide labor and materials, including but not limited to exterior lighting, interior lighting, pole lights, general electrical, electrical service, fire alarm and design services ("*Project*").[8]  Plaintiff pled that it timely performed its obligations pursuant to the Subcontract and timely submitted its

---

[1] ECF No. 56 at 4, ¶ 3.
[2] *Id.*
[3] *Id*. at 5, ¶ 5.
[4] *Id*. at 5, ¶ 6.
[5] *Id*. at 5, ¶ 7.
[6] *Id*. at 5, ¶ 5.
[7] *Id*. at 3, ¶ 3, at 6, ¶ 10.
[8] *Id*. at 6, ¶ 11.

pay applications to ACC.[9]  Plaintiff further pled that ACC "slow-paid" Plaintiff's invoices before ceasing payment altogether.[10]  As of the date of the filing of the bankruptcy petition, Plaintiff maintains that it was still owed $586,496.15 from ACC. [11]

On September 25, 2020, Plaintiff filed a voluntary petition under chapter 11 subchapter V of the Bankruptcy Code.[12]  On April 29, 2021, Plaintiff initiated an adversary proceeding by filing a complaint ("*Initial Complaint*") against NSPS, Denham-Blythe, ACC, and James Rozman.[13] Defendant NSPS filed a motion to dismiss ("*First Motion to Dismiss*") the Initial Complaint on June 7, 2021.[14]  Plaintiff then filed an amended complaint ("*Amended Complaint*") on June 22, 2021 against the same parties.[15]  Defendant filed the pending motion to dismiss ("*Motion to Dismiss*") on September 24, 2021[16] and Plaintiff filed its response to the motion to dismiss ("*Response*") on November 19, 2021.[17]  On December 10, 2021, Defendant filed a reply in support of the motion to dismiss ("*Reply*").[18]  On January 4, 2022, the Court held a hearing on the Motion To dismiss.[19]

## II.   JURISDICTION AND VENUE

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." An adversary proceeding falls within the Court's "related to" jurisdiction if the "outcome of that proceeding could conceivably have any effect on the estate being

---

[9] *Id*. at 6, ¶ 13.
[10] *Id*. at 7, ¶ 15, 17.
[11] *Id*. at 7, ¶ 17.
[12] Bankr. ECF No. 1.
[13] ECF No. 1.
[14] ECF No. 32.
[15] ECF No. 56.
[16] ECF No. 125.
[17] ECF No. 181.
[18] ECF No. 195.
[19] ECF No. 199.

administered in bankruptcy."[20]  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[21]  This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (H) this adversary proceeding involves primarily core matters as it "concern[s] the administration of the estate and proceedings to avoid and recover preferences and fraudulent conveyances."[22]

Furthermore, this Court may only hear a case in which venue is proper.[23]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor ATE's main chapter 11 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.

## III.  ANALYSIS

### A. Standard of Review for Motions to Dismiss Under Federal Rules of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear two hurdles.  First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it.[24]  "[A] formulaic recitation of the elements of a cause of action will not do."[25]  Specifics are unnecessary, but some facts must support each element.[26]  Second, the complaint must state a claim "plausible on its face,"[27] meaning the plaintiff's right to relief must

---

[20] *In re Trevino*, 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015) (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 93 (5th Cir. 1987)).
[21] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[22] 11 U.S.C. § 157(b)(2); s*ee also In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").
[23] 28 U.S.C. § 1408.
[24] *See* FED. R. CIV. P. 8(a) (made applicable by FED. R. BANKR. P. 7008).
[25] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[26] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[27] *Twombly*, 550 U.S. at 570.

rise above a "speculative level."[28]  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[29]  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[30]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[32]

Motions to dismiss are disfavored and thus, rarely granted.[33]  This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the Plaintiff."[34]  When considering a motion to dismiss under Rule 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support.[35]  The Court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."[36]  And although this Court "will not strain to find inferences favorable to the plaintiff[]",[37] the facts need only be sufficient "for an

---

[28] *Id.* at 555.

[29] FED. R. CIV. P. 8(a).

[30] 556 U.S. at 679 (quoting Rule 8(a)(2)).

[31] *Id.* at 678.

[32] *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).

[33] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[34] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[35] *Koppel v. 4987 Corp.,* 167 F.3d 125, 133 (2d Cir. 1999).

[36] *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir. 1993).

[37] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

inference to be drawn that the elements of the claim exist."[38]  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements.

## B.  Defendant's Motion to Dismiss

In its Complaint, Plaintiff brings fifteen causes of action against ACC, NSPS, Denham-Blythe Company, and James Rozman.  Against Defendant NSPS specifically, Plaintiff asserts the following ten claims: (1) Claim A — negligent hiring and supervision; (2) Claim B — Bankruptcy Code Turnover § 542; (3) Claim D — Bankruptcy Code §§ 548(a)(1)(B) and 550 - Constructive Fraudulent Transfer; (4) Claim E — TUFTA Constructive Fraudulent Transfer; (5) Claim F — Quantum Meruit; (6) Claim G — Unjust Enrichment; (7) Claim H — Foreclosure of Liens; (8) Claim I — Funds Trapping - Texas Property Code § 53.083; (9) Claim L — Breach of Fiduciary Duty; and (10) Claim O — Civil Conspiracy.  Defendant seeks dismissal of eight of the ten claims: (A); (B); (D); (E); (F); (G); (L); and (O).  Plaintiff's claims (H) and (I) are not raised in Defendant's Motion to Dismiss, and thus will proceed to discovery.  The Court will discuss the remaining eight claims in turn.

### 1.  Claim A - negligent hiring and supervision

Plaintiff asserts Claim A against NSPS for "Negligent Hiring and Supervision."[39]  To establish a claim for negligent hiring, Plaintiff must prove the following elements: (1) a duty to hire competent employees; (2) an employer's breach of the duty; and (3) the employer's breach of the duty proximately caused the damages sued for.[40]  For this claim, the basis of responsibility is the employer's negligence in hiring an incompetent employee who the employer knew or, in the exercise

---

[38] *See Harris v. Fidelity Nat'l Info. Serv* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072, at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *to Walker v. South Cent. Bell Tel. Co.*, 904 F2d 275, 277 (5th Cir. 1990)).
[39] ECF No. 56 at 8.
[40] *Chevron Thail. Expl. & Prod., Ltd. v. Taylor*, No. 14-18-00540-CV, 2019 Tex. App. LEXIS 10426, at *9 (Tex. App.—Houston [14th Dist.] Dec. 3, 2019).

of ordinary care, should have known was incompetent or unfit, and thereby created an unreasonable risk of harm to others.[41]   Similarly, to prevail on a claim for negligent supervision, Plaintiff must prove (1) Defendant owed Plaintiff a legal duty to supervise its employees; (2) Defendant breached the duty; and (3) the breach proximately caused the Plaintiff's injuries.[42]

Here, Plaintiff contends that Defendant had "an implied duty not to harm ATE" that was "independent of any contractual obligations."[43]   Additionally, Plaintiff asserts that Defendant had a duty to "protect the public, including subcontractors such as ATE . . . ."[44]   Plaintiff argues that Defendant breached that duty by: (1) failing to "heed the warning of Denham against engaging ACC;" (2) failing to "adequately inquire into the competence and qualifications of ACC before engaging it as general contractor;" (3) "engag[ing] ACC as its general contractor when [NSPS] knew or should have known that ACC lacked the professional and financial competency to properly [sic] perform;" (4) "failing to require that ACC post payment or performance bonds, or other security, to protect unpaid subcontractors" after engaging ACC; (5) failing to "exercise reasonable care to supervise ACC in its role as general contractor on the NSPS Project to assure itself that ACC was paying its subcontractors and not mishandling construction trust funds;" (6) failing to "replace ACC as general contractor once [it] knew or should have known that ACC was mishandling construction payments from NSPS and/or defaulting on payments to subcontractors;" (7) "pay[ing] ACC even when NSPS knew ACC was not paying its subcontractors."[45]

---

[41] *Law Firm of Donald Wochna, LLC v. Am. Frontier Mgmt., LLC*, No. 03-17-00489-CV, 2018 Tex. App. LEXIS 2371, at *16 (Tex. App.—Austin Apr. 4, 2018); *Ogg v. Dillard's Inc*., 239 S.W.3d 409, 420 (Tex. App.—Dallas 2007, pet. denied).

[42] *Brown v. ECCL 4:12, LLC*, No. 01-19-00504-CV, 2021 Tex. App. LEXIS 6026, at *20 (Tex. App.—Houston [1st Dist.] July 29, 2021).

[43] ECF No. 56 at 9, ¶ 31.

[44] *Id.* at 9, ¶ 32.

[45] *Id.* at 10–11, ¶ 33.

In its Motion to Dismiss, Defendant asserts two arguments: (1) that the economic loss rule bars Plaintiff's negligent hiring and supervision claim; and (2) that "the Amended Complaint fails to establish a plausible claim that a breach of a duty owed to [Plaintiff] caused [Plaintiff's] economic losses."[46]  For the first argument, the economic-loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract."[47]  "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence."[48]  "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself."[49]  Finally, the economic loss rule may still preclude recovery in cases where the parties have not directly contracted with each other.[50]

In a Motion to Dismiss previously filed by Defendant Denham-Blythe, this Court ruled that the economic loss rule precluded recovery by Plaintiff for negligent hiring and supervision as it pertained to Denham-Blythe.[51]  The facts, as they pertain to Defendant NSPS are very similar.  Like Denham-Blythe, Defendant did not contract with Plaintiff directly.  Instead, Defendant hired ACC as general contractor.[52]  ACC then engaged Plaintiff in a $915,405.00 subcontract for the provision

---

[46] ECF No. 126 at 5-6.

[47] *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).

[48] *Id.* at 12–13 (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

[49] *Stanley Indus. of S. Fla. v. J.C. Penney Corp., Inc.*, No. 3:05-cv-2499-L, 2006 U.S. Dist. LEXIS 63109, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors*, Inc., 960 S.W.2d 41, 45-47 (Tex. 1998)).

[50] *See LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 248 (Tex. 2014) (holding that the economic loss rule can still be applicable in the absence of direct contract between parties); *see also Trebuchet Siege Corp. v. Pavecon Commer. Concrete, Ltd.*, No. 05-12-00945-CV, 2014 Tex. App. LEXIS 9149, at *17 (Tex. App.—Dallas Aug. 19, 2014) ("The economic loss rule not only applies to bar claims against those in a direct contractual relationship but also applies to preclude tort claims between parties who are not in privity.").

[51] ECF No. 132 at 6–9.

[52] ECF No. 56 at 5, ¶ 6.

of electrical services.[53]  The Texas Supreme Court has clarified that the lack of a contractual arrangement between Plaintiff and Defendant will not bar application of the economic loss rule.[54]  In fact, in *LAN/STV v. Martin K. Eby Construction Company,* the court specifically referenced construction disputes as an ideal situation to apply the economic loss rule between non-contracting parties due to the ability to allocate risk in related agreements.[55]  Therefore, the third-party relationship between Plaintiff and Defendant alone is not sufficient to bar application of the economic loss rule.

Next, the duties of negligent hiring and supervision are not independent of Defendant's contractual obligation.  In the Amended Complaint, Plaintiff flatly asserts that "[Defendant] . . . assumed an implied duty not to harm [Plaintiff] . . . ." and that "[s]uch assumed duty is independent of any contractual obligations they have to one another, or with ACC."[56]  However, Plaintiff fails to expand on this proposition in the Amended Complaint or cite any case law to support it.  Plaintiff's argument seemingly relies on the premise that the claim is independent of contractual obligations simply because negligent hiring and supervision is an assumed duty of law.  However, courts have repeatedly noted that claims for a breach of duty imposed by law, including negligent hiring claims, may still be subject to the economic loss rule if the injury is only the economic loss to the subject of the contract itself.[57]  Therefore, the key inquiry is whether the economic loss was subject to the contract.

---

[53] *Id.* at 6, ¶ 11.

[54] *LAN/STV*, 435 S.W.3d at 248.

[55] *See id.* ("[C]onstruction disputes . . . are good candidates for precluding recovery under the 'economic loss' rule, because the parties are in a position to protect themselves through bargaining.").

[56] ECF No. 56 at 9, ¶ 31.

[57] *See Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 290 (Tex. App.—Dallas 2015) (holding that a negligent hiring and supervision claim was barred because the only loss was subject to the contract); *Escalona v. MC Charter, LLC*, No. 14-17-01008-CV, 2019 Tex. App. LEXIS 6633, at *11 (Tex. App.—Houston [14th Dist.] Aug. 1, 2019) (finding that the economic loss rule prevented recovery of damages under a negligent hiring claim).

Here, the damages sought by Plaintiff rest solely on the economic harm Plaintiff suffered when ACC breached the subcontract with Plaintiff. The factual basis of Plaintiff's claims against ACC was that ACC failed to pay Plaintiff on-time, or at all, in violation of the terms of the contract between them. Plaintiff's claim against Defendant was premised on Defendant allegedly negligently hiring and supervising a general contractor who both did not pay and failed to timely pay Plaintiff. Obviously, this economic harm is rooted in breach of contract.

Furthermore, Plaintiff's attempt to classify the loss of materials purchased for use on the Project as "property damage" rather than economic harm[58] has no merit. Plaintiff specifically pled that the Subcontract provided for the cost of materials in addition to labor.[59] Therefore, as with Defendant Denham-Blythe in its previous motion to dismiss, here, the economic loss rule bars Plaintiff from recovering this loss from Defendant NSPS and the Court need not address Defendant's second argument for dismissal as to Claim A.

In granting Defendant Denham-Blythe's previous motion to dismiss as to Plaintiff's negligent hiring and supervision claims, the Court did so with prejudice.[60] Here, the Court again dismisses Plaintiff's negligent hiring and supervision claims with prejudice – this time as to Defendant NSPS. The Court finds that any attempt to amend would be futile because the pleadings clearly demonstrate circumstances triggering the economic loss rule. Further, Plaintiff has already had one previous opportunity to amend[61] and the period for amendment as a matter of course has long since expired.[62]

---

[58] ECF No. 181 at 3–4.
[59] ECF No. 56 at 6, ¶ 11 ("On or about June 3, 2019, ATE entered into lump sum subcontractor agreement ("Subcontract") with ACC in the amount of $915,405.00 to provide to the NSPS Project labor and materials, including but not limited to exterior lighting, interior lighting, pole lights, general electrical, electrical service, fire alarm and design services.").
[60] ECF No. 132.
[61] ECF No. 56.
[62] See FED. R. CIV. P. 15(a)(1).

Accordingly, Plaintiff's Claim A for negligent hiring and supervision as to NSPS Metals, LLC is dismissed with prejudice.

## 2. Claim B - § 542 turnover

Plaintiff asserts Claim B against Defendant for turnover.[63]   However, in its Amended Complaint, Plaintiff fails to specify which subsection of § 542 Claim B is brought under.   The only two subsections that would arguably be applicable are § 542(a) and (b).   Section 542(a) provides that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title [11 USCS § 363], or that the debtor may exempt under section 522 of this title [11 USCS § 522], shall deliver to the trustee . . . ."[64]   On the other hand, § 542(b) provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee."[65]   The key difference between the two subsections is that § 542(a) relates to an entity in possession while § 542(b) relates to an entity that is not in possession but owes an undisputed debt. The overall function of § 542 is to return possessory rights in property to the trustee.[66]   Notably, however, § 542 is used to recover possession, not title.[67]   "It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute."[68]

In the Amended Complaint, Plaintiff contends that Defendant is "in possession of construction trust funds for which ATE is the beneficiary."[69]   However, the only definition of trust funds

---

[63] ECF No. 56 at 11, ¶ 37.

[64] 11 U.S.C. § 542(a).

[65] 11 U.S.C. § 542(b).

[66] *Tow v. HBK Main St. Invs., L.P. (In re ATP Oil & Gas Corp.)*, Nos. 12-36187, 14-03286, 14-03287, 2015 Bankr. LEXIS 781, at *7 (Bankr. S.D. Tex. 2015); 5 Collier on Bankruptcy ¶ 542.01, p. 542-3 (16th ed. 2013).

[67] *U.S. v. Inslaw, Inc.*, 932 F2d 1467, 1472 (D.C. Cir. 1991).

[68] *Id.*; *see also Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines), Inc.*, 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996) (Sotomayor, J.)

[69] ECF No. 56 at 12, ¶ 43.

that Plaintiff provides in the Amended Complaint is "[p]ayments made to ACC (or to its officers or agents) on the NSPS Project . . ."[70]  Under either a § 542(a) or § 542(b) theory, Plaintiff has not sufficiently pled a plausible claim.  First, under § 542(a), Defendant cannot be in possession of the trust funds since Plaintiff defines these funds as those that have already been paid to ACC.  Therefore, Plaintiff has not met its pleading burden under § 542(a) to allege Defendant is in possession of property that is rightfully in Plaintiff's bankruptcy estate.  Next, under § 542(b) Plaintiff's claim fails because it is merely a disputed breach of contract claim.  As discussed above, Plaintiff seeks to recover for unpaid materials and services subject to Plaintiff's agreement with ACC in the Subcontract.  In the Motion to Dismiss, Defendant clearly disputes that it is personally liable to Plaintiff for the damages sought in the First Amended Complaint.[71]  Thus, Plaintiff cannot bring this turnover action to demand funds that are in dispute.

Accordingly, Plaintiff's Claim B for § 542 turnover as to NSPS Metals, LLC is dismissed.

### 3.  Claim D - §§ 548(a)(1)(B) and 550 constructive fraudulent transfer

Plaintiff brings Claim D under §§ 548(a)(1)(B) and 550 of the Bankruptcy Code.  Section 548(a)(1)(B) allows the trustee or debtor-in-possession to avoid a constructively fraudulent transfer.  Under § 548(a)(1)(B), to state a claim for fraudulent transfer Plaintiff must demonstrate that: (1) a transfer was made of the Debtor's property; (2) the transfer was made within two years of the Petition Date; (3) the Debtor received less than reasonably equivalent value in exchange for such transfer; and (4) the Debtor was insolvent at the time of such transfer, or became insolvent as a result of such transfer or obligation.[72]  If the trustee or debtor-in-possession successfully avoids a

---

[70] *Id.* at 19, ¶ 93.
[71] ECF No. 126 at 5 ("As a matter of law, these facts do not give rise to a plausible claim that any tort or fraudulent transfer occurred, or that NSPS is liable for any of the non-lien causes of action asserted.").
[72] *See* 11 U.S.C. § 548(a)(1)(B)(i)–(ii).

transfer, § 550 sets forth liability of a transferee.[73]  Section 550 provides that to the extent that a transfer is avoided under § 548, a trustee may recover, for the benefit of the estate, the property transferred or its value to be paid by "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."[74]

At the outset, the Court notes a significant misstatement in Plaintiff's characterization of the alleged transfer.  In the Amended Complaint, Plaintiff asserts that "ATE's performance of services under the Subcontract—including without limitation, ATE's acquisition and provision to [NSPS and ACC] of equipment and building materials purchased by ATE from multiple job vendors -- were transfers of ATE property (or property in which ATE had an interest) for which ATE received less than a reasonably equivalent value in exchange for such transfers,"[75] and that Plaintiff is entitled to a judgment for avoidance and recovery of the transferred property.  The problem with this pleading is that Plaintiff treats the transfer of building materials and equipment as one singular transfer when they were actually multiple transactions occurring over an extended period.

For guidance on how to treat this pleading, this Court looks to precedent.  In cases seeking avoidance actions where multiple payments were made to the same entity, the trustee is charged with demonstrating that each individual payment meets the elements of the avoidance action.[76] Frequently, cases arise where some, but not all of the payments were transferred outside of the

---

[73] *See* 11 U.S.C. § 550.
[74] 11 U.S.C. §§ 550(a)(1)–(2).
[75] ECF No. 56 at 13, ¶ 55.
[76] *See Bond v. Nat'l Fin. Servs. (In re United States Mortg. Corp.)*, 491 B.R. 642, 658 (Bankr. D.N.J. 2013) (analyzing whether each § 548 claim occurred within the requisite statutory filing period); *Emerald Capital Advisors Corp. v. Bayerische Moteren Werke Aktiengesellschaft (In re Fah Liquidating Corp.)*, 572 B.R. 117, 126-27 (Bankr. D. Del. 2017) (finding that three transfers occurred within the statutory period and satisfied a necessary element under § 548(a)(1)(B), while other transfers were outside the period and thus required dismissal); *Wisper II, LLC v. Abernathy (In re Wisper, LLC)*, Nos. 13-10770, 14-5043, 2015 Bankr. LEXIS 4083, at *160 (Bankr. W.D. Tenn. 2015) (separately analyzing monthly salary transfers and transfers directly to a bank account).

statutory look-back-period.[77]   Courts have not grouped these payments together but rather have parsed out which payments qualify for avoidance and which do not.[78]   Similarly, where multiple parcels of real property were transferred to the same entity, courts have not grouped the total real property transfer as one but have placed a burden on trustees to prove each element of each real property transfer.[79]   Thus, this Court finds that it must analyze not whether Plaintiff has met its burden in pleading that the sum total of alleged service, building equipment, and material transfers meet the elements of § 548(a)(1)(B), but rather whether each individual transfer meets the requirements.

The first element under § 548(a)(1)(B) is that there be a transfer of property and that the debtor had an interest in that property.   The Code broadly defines transfer in § 101(54) as every "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with - (i) property, or (ii) with an interest in property."[80]   Plaintiff pled that it transferred services, building equipment, and materials to Defendant and ACC while performing under the Subcontract.   In support, Plaintiff attaches a list of materials purchased in Exhibit B.

Services are not "property of the debtor."   Although the Bankruptcy Code does not define property of the debtor, the Supreme Court has recognized that "property of the estate" under § 541(d) should be read as the post-petition analog to what constitutes property of a debtor under avoidance powers.[81]   Under § 541, services are not classified as a form of property of the estate.

---

[77] See Bond, 491 B.R. at 658; In re Fah Liquidating Corp., 572 B.R. at 126–27.

[78] See Bond, 491 B.R. at 658; In re Fah Liquidating Corp., 572 B.R. at 126–27.

[79] See Osherow v. Charles (In re Wolf), Nos. 15-31477-HCM, 16-03002-HCM, 16-03005-HCM, 2016 Bankr. LEXIS 3397, at *154 (Bankr. W.D. Tex. 2016) (separately analyzing whether each of the eight properties alleged to have been fraudulently conveyed met the elements of § 548); Slone v. Lassiter (In re Grove-Merritt), 406 B.R. 778, 786 (Bankr. S.D. Ohio 2009) (finding that an allegedly fraudulent transfer of property to defendant occurring in April was not avoidable while an allegedly fraudulent transfer of property to defendant occurring in December was avoidable).

[80] 11 U.S.C. § 101(54).

[81] Begier v. IRS, 496 U.S. 53, 59 (1990).

Therefore, when Plaintiff performed building and construction services for ACC under the Subcontract, it was not transferring a property interest.  The building equipment and materials, however, qualify as property of the estate under § 541 and thus constitute property that the Plaintiff had an interest in.  Because Plaintiff attached a list of each individual piece of building equipment and material purchased in Exhibit B and pled that it transferred these items to ACC and Defendant, Plaintiff has met its burden on the first element.

For the second element, Plaintiff must sufficiently plead that it made a transfer to Defendant within two years before the petition filing date. "To adequately plead this element [Plaintiff] needs to recite sufficient factual information, including the date of the transfer, the amount of the transfer, the name of the transferor, and the name of the transferee."[82]  Here, Plaintiff provides a long list of vendors, transferred materials, and dates of purchase in Exhibit B.  However, the problem with this list is that it demonstrates when these materials became property of the Plaintiff, not necessarily when they were transferred to the Defendant.  For example, Plaintiff may have purchased a particular piece of equipment in June but kept it in its own possession until using it on the Project in September.  The key date from which the two-year period is analyzed is the latter and the Amended Complaint does not contain the date of transfer but merely the date of acquisition.  That being said, Plaintiff pled that all of these transfers occurred during its performance of the Subcontract.  The Amended Complaint also states that the Subcontract was executed on June 3, 2019.  Since Plaintiff's bankruptcy petition was filed on April 29, 2021, less than two years after the Subcontract was executed, the Court finds that Plaintiff has satisfied its burden in pleading sufficient factual context from which this Court ascertains that it is plausible the transfers occurred within two years.

---

[82] *Sarachek v. Right Place Inc. (Agriprocessors, Inc.)*, Nos. 08-2751, 10-09123, 2011 Bankr. LEXIS 3671, at *15 (Bankr. N.D. Iowa 2011).

The third element requires Plaintiff to allege facts that plausibly show the debtor received less than a reasonably equivalent value in exchange for such transfers. "[R]easonably equivalent value is a fact intensive determination that typically requires testing through the discovery process." A complaint, however, must do more than just summarily state there was "less than a reasonably equivalent value in exchange."[83]  In the Amended Complaint, Plaintiff pled that "ACC's promises to pay were not equivalent value" for the materials provided.  The pleading shows that Plaintiff believes the value received was ACC's promise to pay.  However, Plaintiff also states in other sections of its Amended Complaint that it received periodic payments from ACC.[84]  Since each transfer of building equipment and material is treated individually, Plaintiff bears the burden of pleading that it did not receive reasonably equivalent value for each transfer.  If Plaintiff received periodic payments from ACC, it likely received reasonably equivalent value on at least some of the transfers.  Whether this is true or not, it was Plaintiff's burden to break down each transfer and show that it did not receive reasonably equivalent value, and Plaintiff failed to do so.  Plaintiff has not satisfied the third element.

For the fourth element, Plaintiff offers little or no factual support.  Plaintiff was required to plead that it "was insolvent at the time of such transfer, or became insolvent as a result of such transfer or obligation."  "Insolvent" is a defined term in the Bankruptcy Code.  A corporate debtor is insolvent when the "sum of its debts is greater than all of its property, at a fair valuation . . . ."[85]  Simply repeating the elements, Plaintiff pled generally that: (1) "ATE was insolvent on the date that such transfer was made or became insolvent as a result of such transfer"; (2) "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any

---

[83] *Id.*
[84] ECF No. 56 at 7, ¶ 15 ("ACC 'slow-paid' ATE occasionally.").
[85] 11 U.S.C. § 101(32)(A).

property remaining with ATE was an unreasonably small capital"; and (3) "ATE intended to incur, or believed that ATE would incur, debts that would be beyond ATE ability to pay as such debts matured."[86]  Plaintiff provides no factual support for these assertions such as balance sheets or additional financial information.  Even the pleadings themselves are entirely open ended and non-committal.  Furthermore, Plaintiff was required to plead and provide factual context for each individual transfer it sought to avoid.  By failing to carry its burden, Plaintiff has not satisfied the fourth element.

Accordingly, Plaintiff's Claim D under §§ 548(a)(1)(B) and 550 as to NSPS Metals, LLC is dismissed.

### 4.   Claim E - TUFTA constructive fraudulent transfer

Plaintiff brings Claim E under the Texas Uniform Fraudulent Transfer Act ("*TUFTA*").[87] However, Plaintiff fails to clarify under which of the TUFTA subsections it brings its claim.  In the Claim E section of the Amended Complaint, Plaintiff pled a series of factual allegations but only referenced specific TUFTA subsections once.  This occurs in the last line of the Claim E section: "ATE is entitled to judgment against defendants NSPS and ACC for avoidance and recovery of the transferred property, or the value of such transfers. Tex. Bus. & Comm. Code §§24.005, 24.006, 24.08, and 24.009; see also 11 U.S.C. § 550."  The reference is in the form of an above-the-line-citation rather than a clear assertion of which subsections Plaintiff contends entitles it to relief.

The issue is more problematic than just a placement error though.  Within section 24.005, multiple theories of relief are possible.  Section 24.005(a)(1) deals with an actual fraudulent

---

[86] ECF No. 56 at 13, ¶ 57.
[87] *Id.* at 13-15.

transfer while section 24.005(a)(2) pertains to a constructive fraudulent transfer.[88]  In the Amended Complaint, Plaintiff does not specify which subsection of 24.005(a) it believes entitles it to relief. Similarly, section 24.006 also contains multiple possibilities for relief since section 24.006(a) involves a constructive fraudulent transfer while section 24.006(b) relates to a transfer to an insider.[89] Again, Plaintiff fails to specify which subsection it asserts in connection with its factual pleadings. Sections 24.008 and 24.009 are less problematic because they relate to recovery once a transfer has been classified as fraudulent under section 24.005 or section 24.006.[90]  Nonetheless, although the failure of Plaintiff to specify which subsections of TUFTA it asserts makes it more challenging both for Defendants to respond and for the Court to analyze, the Court will discuss each in turn.

### a.  Section 24.005(a)(1)

First, Plaintiff has not sufficiently pled a claim for relief under section 24.005(a)(1).  Under section 24.005(a)(1), a transfer is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made, if the debtor made it with actual intent to hinder, delay, or defraud its creditors.[91]  To summarize, the elements of an actual fraudulent transfer under TUFTA are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay or defraud any of the debtor's creditors.  "Actual fraudulent intent is rarely susceptible to direct proof; therefore, the

---

[88] TEX. BUS. & COM. CODE § 24.005; *Spring St. Partners - IV, L.P. v. Lam*, 730 F.3d 427, 436 (5th Cir. 2013) ("In general, a determination of liability under TUFTA is a two-step process: first, a finding that a debtor committed an actual, fraudulent transfer, TUFTA § 24.005(a)(1), or a constructive, fraudulent transfer, id. § 24.005(a)(2)); and, second, recovery of that fraudulent transfer, or its value, from the transferees, id. §§ 24.008-24.009.").
[89] TEX. BUS. & COM. CODE § 24.006.
[90] *Id.* §§ 24.005, 24.006.
[91] *Id.* § 24.005.

requisite intent may be proved circumstantially by presenting evidence of certain 'badges of fraud' that may cumulatively give rise to an inference of intent to hinder, delay, or defraud."[92]

Here, Plaintiff pled that its "performance of services under the Subcontract . . . were transfers of ATE property . . . ."[93]  Since Plaintiff is the one who executed the transfer, to recover under section 24.005(a)(1), Plaintiff must have pled that Plaintiff itself made the transfer with actual intent to hinder, delay, or defraud.  Nothing in the Amended Complaint indicates that Plaintiff provided these materials and services to ACC and Defendant with intent to hinder, delay, or defraud them.  In fact, Plaintiff pled the opposite, suggesting that Defendant and ACC intended to hinder, fraud, or delay Plaintiff.[94]

Furthermore, Plaintiff has failed to plead that Defendant was a creditor of Plaintiff.  The purpose of TUFTA is to prevent fraudulent transfers of property by a debtor who intends to defraud *creditors* by placing assets beyond their reach.[95]  Under TUFTA, a "creditor" is defined broadly as any person who has a "claim."[96]  "Claim" is defined as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured."[97]  Nowhere in the Amended Complaint, does Plaintiff allege that Defendant is a creditor of Plaintiff or that Defendant holds a claim. Therefore, Plaintiff has not stated a claim under section 24.005(a)(1).

### b.  Section 24.005(a)(2)

---

[92] *Jones v. Dyna Drill Techs., LLC*, No. 01-16-01008-CV, 2018 Tex. App. LEXIS 6689, at *14 (Tex. App.—Houston [1st Dist.] Aug. 23, 2018) (quoting *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 370 (S.D. Tex. 2008)).

[93] ECF No. 56 at 14, ¶ 62 ("ATE's performance of services under the Subcontract—including without limitation, ATE's acquisition and provision to defendants of equipment and building materials purchased by ATE from multiple job vendors -- were transfers of ATE property (or property in which ATE had an interest) for which ATE received less than a reasonably equivalent value in exchange for such transfers.").

[94] *Id.* at 14, ¶ 63 ("Defendants knew or should have known about the avoidability of the transfers.").

[95] *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203 (Tex. App.—Houston [1st Dist.] 2014).

[96] TEX. BUS. & COM. CODE § 24.002(4).

[97] TEX. BUS. & COM. CODE § 24.002(3).

Second, to state a claim under section 24.005(a)(2), debtor must show that it made a transfer to a creditor and did not receive reasonably equivalent value for the payments.[98]  Additionally, debtor must show (A) that it was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[99]  TUFTA defines "reasonably equivalent value" as "includ[ing] without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction."[100]

Here, Plaintiff again makes the mistake of not pleading that Defendant is a creditor of Plaintiff.  Although the Amended Compliant fails to state a claim for this reason alone, Plaintiff has also failed to properly plead that it did not receive reasonably equivalent value for the transfers.  The Amended Complaint makes the same mistake in Claim E as it did in Claim D by grouping all of the transfers of materials and services into a singular transfer.[101]  As discussed above, the pleadings reflect a series of transfers that took place over an extended time period.  Thus, Plaintiff should have broken down each instance in which materials were transferred to Defendant.  Since Plaintiff acknowledges that it did receive some payments from Defendant,[102] it is possible that some transfers were made for reasonably equivalent value.  However, without pleading with the required specificity, Plaintiff has not stated a claim under section 24.005(a)(2).

---

[98] TEX. BUS. & COM. CODE § 24.005(a)(2).
[99] *Id.*
[100] *Id.* § 24.004(d).
[101] ECF No. 56 at 14, ¶ 62 ("ATE's performance of services under the Subcontract—including without limitation, ATE's acquisition and provision to defendants of equipment and building materials purchased by ATE from multiple job vendors -- were transfers of ATE property (or property in which ATE had an interest) for which ATE received less than a reasonably equivalent value in exchange for such transfers.").
[102] ECF No. 56 at 7, ¶ 15 ("ACC 'slow-paid' ATE occasionally.").

### c.  Section 24.006(a)

Next, section 24.006(a) provides that a debtor's transfer is fraudulent as to a creditor whose claim arose before the transfer if the debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or became insolvent as a result of the transfer.[103]  Just as in section 24.005(a)(2) above, Plaintiff has not pled that Defendant was a creditor of Plaintiff, and did not break down the transfers sufficiently so as to show that it did not receive reasonably equivalent value for each transfer.  Therefore, Plaintiff has not stated a claim under section 24.006(a).

### d.  Section 24.006(b)

Finally, under section 24.006(b), "a transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider . . . ."[104]  In this scenario, since the debtor is a corporation,[105] "insider" means: (i) a director of the debtor; (ii) an officer of the debtor; (iii) a person in control of the debtor; (iv) a partnership in which the debtor is a general partner; (v) a general partner in a partnership described in Subparagraph (iv) of this paragraph; or (vi) a relative of a general partner, director, officer, or person in control of the debtor.[106]  The only relationship between Plaintiff and ACC is that ACC hired Plaintiff under the Subcontract.  Similarly, Defendant's only relation to Plaintiff was that it owned the project for which the Subcontract was being executed.  Clearly, nothing in the Amended Complaint demonstrates ACC or Defendant as an "insider" of Plaintiff as defined in TUFTA.  Furthermore, Plaintiff

---

[103] Tex. Bus. & Com. Code § 24.006(a).
[104] *Curtis v. Chapman Family Tr. (In re Chapman)*, 628 B.R. 512, 524 (Bankr. S.D. Tex. 2021).
[105] ECF No. 56 at 3, ¶ 1. ("All Texas Electrical Contractors, Inc. ("ATE") is a Texas corporation and chapter 11 debtor in the above-styled bankruptcy case.").
[106] Tex. Bus. & Com. Code § 24.002(7)(b).

has again failed to allege that Defendant was a creditor of Plaintiff. Thus, Plaintiff has not stated a claim under section 24.006(b).

Accordingly, having failed to state a claim under sections 24.005(a)(1), 24.005(a)(2), 24.006(a), and 24.006(b), Plaintiff's Claim E under TUFTA as to NSPS Metals, LLC is dismissed.

### 5.   Claim F - quantum meruit

Plaintiff brings Claim F against Defendant for quantum meruit.[107]  Quantum meruit is an equitable remedy that exists independent of a contract.[108]  To recover under quantum meruit a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.[109]  Quantum meruit is generally only available when there is no contract governing the services rendered.[110]  However, the Texas Supreme Court has recognized three exceptions to the general rule that an express contract bars recovery on a quantum meruit theory: (1) where a plaintiff has partially performed an express contract but was prevented from completing the contract because of the defendant's breach; (2) where a plaintiff partially performs a unilateral contract; and (3) where a breaching plaintiff in a construction contract partially performed under the contract and the defendant accepts and retains benefits arising as a direct result of the plaintiff's partial performance.[111]

In its Motion to Dismiss, Defendant argues that Plaintiff should not be permitted to bring

---

[107] ECF No. 56 at 15, ¶ 69.

[108] *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990).

[109] *Id.*

[110] *Id.*

[111] *Viking Prospector, Inc. v. Xtreme Indus., L.L.C. (In re Viking Offshore (USA) Inc.)*, Nos. 08-31219-H3-11, 08-3296, 2009 Bankr. LEXIS 2467, at *21 (Bankr. S.D. Tex. 2009).

this cause of action for quantum meruit since there was a contract governing the services Plaintiff provided, and no exceptions apply.[112]  Here, Plaintiff and Defendant did not contract directly. However, Defendant executed a contract with ACC who then entered into the Subcontract with Plaintiff.  Plaintiff seeks damages for unpaid services that were governed by the Subcontract.  As the Fifth Circuit clarified in *Kane Enterprises*, quantum meruit is not available in this scenario and the proper remedy for Plaintiff is to pursue a breach of contract claim.[113]  It does not matter that Plaintiff and Defendant did not contract directly as long as the services provided by Plaintiff were subject to one.

Next, none of the exceptions will apply because Plaintiff alleges to have fully performed under the Subcontract.  Each of the exceptions enumerated by the Texas Supreme Court requires partial performance of the contract.  In the Amended Complaint, Plaintiff alleges that "ATE timely performed its obligations pursuant to the Subcontract . . . ."[114]  Curiously, however, Plaintiff later adds a final line to the Original Complaint in its Amended Complaint stating "[i]n addition, to the extent that it is determined that ATE only partially performed, it is entitled to a quantum meruit claim for the value of the services and material provided."[115]  Clearly, these two statements do not align.  At the Rule 12(b)(6) stage, this Court relies on the pleadings of Plaintiff who has pled that it timely performed under the Subcontract and has offered no additional pleadings to suggest that it did not fully perform.  The additional language referencing partial performance is meaningless without an assertion that the Plaintiff did in fact only partially perform.  Thus, none of the exceptions will apply and Plaintiff's Claim F could be denied on this basis alone.

---

[112] ECF No. 126 at 11-12.
[113] *See Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 376 (5th Cir. 2003) (finding that the proper remedy for subcontracting party was to pursue a breach of contract claim rather than quantum meruit against the prime contractor).
[114] ECF No. 56 at 6, ¶ 13.
[115] *Id.* at 15, ¶ 72.

Even if the claim were not barred, however, Plaintiff's Claim F must still be dismissed because Plaintiff fails to plead a necessary element of quantum meruit. The fourth element of a claim for quantum meruit requires a plaintiff to have "reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged."[116]  In determining whether this element is satisfied, "the key consideration is the timing of when the plaintiff informs the defendant that it expects to be paid directly by the defendant."[117]  As Defendant notes in its Motion to Dismiss, Plaintiff does not plead that Plaintiff informed Defendant that it expected to be paid directly *before* beginning its work.  Instead, Plaintiff merely alleges that "Defendants knew that ATE expected compensation for its labor and materials on the NSPS Project."  Since Plaintiff fails to plead that it informed Defendant before beginning its work, Plaintiff has not met its burden in pleading an essential element of quantum meruit.

Accordingly, because Plaintiff is barred from bringing a quantum meruit claim and because Plaintiff failed to plead an essential element, Plaintiff's Claim F for quantum meruit as to NSPS Metals, LLC is dismissed.

### 6.  Claim G - unjust enrichment

ATE asserts Claim G against NSPS for unjust enrichment.[118]  Unjust enrichment occurs when a party wrongfully or passively receives a benefit which would be unconscionable to retain.[119]  To remedy the unjust benefit, a quasicontractual relationship is conferred in cases where no contract exists between the parties.[120]  However, unjust enrichment does not apply when there

---

[116] *Vortt Exploration Co.*, 787 S.W.2d at 944.
[117] *Sys. One Holdings LLC v. Campbell*, Civil Action No. B: 18-cv-54, 2018 U.S. Dist. LEXIS 153965, at *15 (S.D. Tex. 2018).
[118] ECF No. 56 at 16.
[119] *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009).
[120] *Lee v. Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist] 2013).

is a valid, express contract covering the subject matter of the parties' dispute.[121]  "This rule is applicable not only when the plaintiff is seeking to recover in equity from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance."[122]  "There are three exceptions to the general rule: (1) when the validity or terms of the express contract are in dispute; (2) when the defendant committed fraud; and (3) when the plaintiff overpaid."[123]

As with its quantum meruit claim, Plaintiff's Claim G for unjust enrichment fails because of the existing agreement between Plaintiff and ACC in the Subcontract.  Plaintiff is seeking damages for the services retained by Defendant when Plaintiff performed under the Subcontract.[124] Since the services were subject to the Subcontract, unjust enrichment is only available if an exception applies.  Here, Plaintiff does not allege that the terms of the Subcontract were ambiguous or that Plaintiff was overpaid.  Furthermore, Plaintiff has not plausibly alleged any claims of fraud in the Amended Complaint which would trigger this exception.

Accordingly, Plaintiff's Claim G for unjust enrichment as to NSPS Metals, LLC is dismissed.

---

[121] *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).
[122] *Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex. App.—Eastland 2013); *see also Hester v. Friedkin Cos., Inc.*, 132 S.W.3d 100, 106 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.*, 42 S.W.3d 149, 160 (Tex. App.—Amarillo 2000, no pet.); *W & W Oil Co. v. Capps*, 784 S.W.2d 536, 537 (Tex. App.—Tyler 1990, no writ).
[123] *Click v. General Motors LLC*, No. 2:18-CV-455, 2020 U.S. Dist. LEXIS 104526, 2020 WL 3118577, at *9 (S.D. Tex. 2020) (citing *Fortune Prod. Co.*, 52 S.W.3d at 684).
[124] ECF No. 56 at 16, ¶¶ 76–77.

### 7.   Claim L - breach of fiduciary duty

Plaintiff asserts Claim L against Defendant for breach of a fiduciary duty.[125]  On December 6, 2021, ATE filed a proposed order stipulating to the dismissal of Claim L with prejudice as to defendant NSPS.[126]

Accordingly, ATEs Claim L for breach of a fiduciary duty as to Defendant NSPS Metals, LLC is dismissed with prejudice.

### 8.   Claim O - civil conspiracy

ATE asserts Claim G against NSPS for civil conspiracy.[127]  Civil conspiracy involves a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.[128]  The elements of a civil conspiracy are (i) two or more persons, (ii) an object to be accomplished, (iii) a meeting of the minds on the object or course of action, (iv) one or more overt unlawful acts, and (v) damages proximately resulting from those acts.[129]  Because the essence of a conspiracy is the secret intent of the conspirators, a plaintiff usually must prove the agreement element of civil conspiracy by circumstantial evidence and by reasonable inference.[130]  Once a civil conspiracy is found, each coconspirator is responsible for any action in furtherance of the conspiracy performed by other conspirators. In other words, each action in a civil conspiracy is imputed to each coconspirator regardless of who actually performed the acts.[131]

---

[125] *Id*. at 21.
[126] ECF No. 189.
[127] ECF No. 56 at 24.
[128] *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719–20 (Tex.1995). *See also, Elliott v. Tilton,* 89 F.3d 260, 264 (5th Cir.1996).
[129] *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983).
[130] *Garcia v. Jordan, Inc.,* 881 S.W.2d 155, 158 (Tex. App.—El Paso 1994, no writ).
[131] *Akin v. Dahl,* 661 S.W.2d 917, 921–22 (Tex.1983), *cert. den'd* 466 U.S. 938 (1984), *rehearing den'd* 467 U.S. 1231 (1984).

The full extent of Plaintiff's pleading is that ACC, James Rozman, Susan Rozman, and Defendant "shared the object of completing the Project" and "had a meeting of the minds on such object or course of actions toward the object of completing the Project, one or more unlawful, overt [sic] acts occurred, including fraud, negligent misrepresentations, breach of fiduciary duty, misapplication of Constructions Trust Funds and fraudulent transfers; and as a proximate cause of the actions of such defendants, ATE suffered damages."[132]  This allegation, once again, is clearly just a formulaic recitation of the elements.  Plaintiff offers no factual or circumstantial evidence of civil conspiracy and thus Plaintiff has failed to meet its burden to state a plausible claim.

Accordingly, ATEs Claim O for civil conspiracy as to Defendant NSPS Metals, LLC is dismissed.

## IV.  CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.


SIGNED January 18, 2022


Eduardo Rodriguez
United States Bankruptcy Judge

---

[132] ECF No. 56 at 24-25, ¶ 142.